UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   |
TRADEX EUROPE SPRL ("TRADEX"),     |
     and KYRA PAHLEN,              |
                                   |
          Plaintiffs,              |
                                   |   06 Civ. 1760 (KMW) (FM)
     -against-                     |
                                   |   OPINION AND ORDER
CONAIR CORPORATION,                |
                                   |
          Defendant.               |
                                   |
-----------------------------------X
KIMBA M. WOOD, U.S.D.J.:

Plaintiffs Tradex Europe SPRL ("Tradex") and Kyra Pahlen ("Pahlen") bring this action against Defendant Conair Corporation for breach of contract.[1]  Defendant moves for summary judgment, arguing that Plaintiffs have failed to prove that they suffered damages as a result of the alleged breach of contract. Plaintiffs oppose the motion.  For the reasons set forth below, the motion is granted in part and denied in part.

**BACKGROUND**

Unless otherwise noted, the following facts are undisputed. On September 16, 2004, Plaintiff Tradex entered into a consultancy agreement with Scunci International, Inc. ("Scunci"), a Pennsylvania corporation that marketed, sold, and distributed hair accessories (the "Tradex Consultancy Agreement").  (Compl. ¶

---

[1] Plaintiffs also originally asserted a promissory estoppel claim against Defendant (Compl. ¶¶ 36-41), but have since withdrawn this claim (Opp'n 2 n.1).  Accordingly, the claim is dismissed.

10.)  On the same date, Plaintiff Pahlen entered into a similar consultancy agreement with Scunci (the "Pahlen Consultancy Agreement").  Pursuant to the Tradex Consultancy Agreement and the Pahlen Consultancy Agreement (collectively, the "parties' consultancy agreements" or the "consultancy agreements"), Plaintiffs promised to perform a variety of consulting services on behalf of Scunci in order to expand Scunci's business internationally.  (Def.'s Local Rule 56.1 Statement ¶¶ 11, 29.) The sole compensation to be paid to Plaintiffs for services rendered was a 4 percent commission on net sales revenues collected by Scunci from transactions executed as a result of Plaintiffs' consulting services.  (Def.'s Statement ¶¶ 12, 30.)

The parties' consultancy agreements included a "Limitations on Liability" provision, which stated:

> EACH PARTY HERETO AGREES THAT ITS MAXIMUM, CUMULATIVE LIABILITY FOR ALL BREACHES OF ANY PROVISIONS OF THIS AGREEMENT OR ANY OTHER BREACHES OF CONDITIONS OR TERMS, OR IN ANY OTHER WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT FOR ALL CAUSES OF ACTION WHATSOEVER AND REGARDLESS OF THE FORM OF ACTION (INCLUDING BREACH OF CONTRACT, TORT OR ANY OTHER LEGAL OR EQUITABLE THEORY), SHALL BE LIMITED TO SUCH PARTY'S ACTUAL DIRECT DAMAGES IN AN AMOUNT NOT TO EXCEED THE TOTAL AMOUNT PAID TO [PLAINTIFFS] BY SCUNCI UNDER [THE PARTIES' CONSULTANCY AGREEMENTS] DURING THE TWELVE MONTH PERIOD PRIOR TO THE DATE THE FIRST CAUSE OF ACTION HEREUNDER AROSE.

(Def.'s Statement ¶¶ 17, 35.)  The consultancy agreements also included a "Consequential Damages" provision, which stated:

> UNDER NO CIRCUMSTANCES SHALL ANY PARTY BE LIABLE TO ANY OTHER PARTY . . . FOR SPECIAL, INCIDENTAL, EXEMPLARY, PUNITIVE, MULTIPLE, CONSEQUENTIAL OR INDIRECT DAMAGES,

> INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL
> OR FUTURE BUSINESS PROFITS, FUTURE LOSS OF REVENUE . . .
> WHETHER SUCH DAMAGES ARE ALLEGED IN TORT, CONTRACT OR
> OTHERWISE . . . .

(Def.'s Statement ¶¶ 18, 36.) Plaintiffs and Scunci were all represented by counsel in negotiating and executing the consultancy agreements. (Def.'s Statement ¶¶ 4-6, 22-24.)

Following the execution of the consultancy agreements, Plaintiffs entered into discussions with a number of companies on behalf of Scunci in an effort to secure sales and distribution contracts for Scunci products. Plaintiffs claim that during the early part of 2005, they engaged in preliminary negotiations with at least eleven potential distributors and retailers. (Pls.' Local Rule 56.1 Counterstatement ¶¶ 63, 68.) Plaintiffs also allege that they secured letters of intent from two companies that expressed an interest in selling Scunci products in Brazil and Asia, respectively. (Pls.' Counterstatement ¶¶ 69-74.) By the end of March 2005, however, no sales or distribution contracts had been executed as a result of Plaintiffs' efforts.

On March 21, 2005, Defendant acquired substantially all of the assets of Scunci. (Def.'s Statement ¶¶ 3, 21.) As part of this acquisition, Defendant assumed Scunci's obligations under the parties' consultancy agreements. (Id.) Plaintiffs claim that following Defendant's acquisition of Scunci, Defendant began actively interfering with Plaintiffs' efforts to secure sales and distribution contracts for Scunci products, and thereby prevented

3

Plaintiffs from earning commissions under the consultancy agreements. (Compl. ¶ 39; Pls.' Counterstatement ¶¶ 87-114.) Defendant denies any wrongdoing in its dealings with Plaintiffs under the parties' consultancy agreements. (Reply 5.)

**DISCUSSION**

**I. THE SUMMARY JUDGMENT STANDARD.**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007). A genuine issue of material fact exists if there is sufficient evidence to allow a "reasonable jury" to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of demonstrating the absence of any genuine issue of material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997). Once this initial burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d

Cir. 1996). At this stage, the Court must view the evidence presented "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Am. Cas. Co. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (internal quotations omitted).

**II. BREACH OF CONTRACT CLAIMS UNDER NEW YORK LAW.**

New York law governs the interpretation and application of the parties' consultancy agreements. (Tradex Consultancy Agreement ¶ 14.8 (Def.'s Statement Ex. A); Pahlen Consultancy Agreement ¶ 14.8 (Def.'s Statement Ex. C).) To prevail on a breach of contract claim under New York law, a plaintiff must show (1) the existence of an agreement, (2) due performance on the agreement by the plaintiff, (3) breach of the agreement by the defendant, and (4) damages suffered by the plaintiff as a result of the breach. Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000); Marks v. New York University, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

Defendant contends that it is entitled to summary judgment because Plaintiffs have failed to show damages on their breach of contract claim. Specifically, Defendant argues that pursuant to the Limitations on Liability provision and the Consequential Damages provision in the parties' consultancy agreements (collectively, the "damages limitation provisions"), Plaintiffs are precluded from recovering certain types of damages on their

5

breach of contract claim.[2] Plaintiffs argue that the damages limitation provisions should not be enforced because Defendant acted in bad faith by actively interfering with Plaintiffs' efforts to earn commissions.

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that the damages limitation provisions are enforceable, and that Plaintiffs are therefore precluded from recovering actual direct damages and consequential damages for Defendant's alleged breach.

Defendant, however, fails to address whether Plaintiffs may recover <u>nominal</u> damages for Defendant's alleged breach. Defendant has therefore not shown that it is entitled to summary judgment on the issue of nominal damages.

### A. *The Damages Limitation Provisions Preclude Plaintiffs From Recovering Actual Direct Damages and Consequential Damages.*

Under New York law, contractual provisions limiting a party's liability are generally enforceable. See <u>Metropolitan Life Ins. Co. v. Nobel Lowndes Int'l Inc.</u>, 643 N.E.2d 504, 507 (N.Y. 1994) ("A limitation on liability provision in a contract

---

[2] Pursuant to the damages limitation provisions, Plaintiffs' damages for any breach of contract on the part of Defendant are limited to actual direct damages. (Mem. Law 7-8.) Plaintiffs' actual direct damages are in turn limited to "THE TOTAL AMOUNT PAID TO [PLAINTIFFS] BY SCUNCI [FOR THE PRECEDING TWELVE MONTH PERIOD]." (Mem. Law 7-8.) In this case, it is undisputed that Plaintiffs failed to secure any sales and distribution contracts for Scunci products, and were therefore paid nothing under the parties' consultancy agreements. (Opp'n 1.) Thus, the damages limitation provisions, if enforceable, would limit Plaintiffs' damages to zero dollars.

represents the parties [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.") (citing 5 Corbin, Corbin on Contracts § 1068, at 386 (1964)).

A limitation on liability provision is unenforceable, however, where "the misconduct for which [the provision] would grant immunity smacks of intentional wrongdoing." Kalisch-Jarcho, Inc. v. City of New York, 448 N.E.2d 413, 416-17 (N.Y. 1983). New York courts "set the bar quite high" in determining whether a party's conduct "smacks of intentional wrongdoing." Deutsche Lufthansa AG v. Boeing Co., No. 06 Civ. 7667, 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007) (quoting Kalisch-Jarcho, 448 N.E.2d at 417); see also Industrial Risk Insurers v. Port Auth. of N.Y. and N.J., 387 F. Supp. 2d 299, 305 (S.D.N.Y. 2005). Where, as here, sophisticated parties, represented by counsel, have voluntarily entered into contracts containing limitation on liability provisions, a court may set aside the provisions only where defendant's conduct constitutes "egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts." Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y., 273 F. Supp. 2d 436, 454 (S.D.N.Y. 2003); see also DynCorp v. GTE Corp., 215 F. Supp. 2d 308, 318 (S.D.N.Y. 2002) (refusing to set aside a limitation on liability provision

7

despite allegations of willful or grossly negligent breach of contract where "sophisticated parties represented by sophisticated counsel, unambiguously provided the limit of recovery in the event of breach").

In this case, Plaintiffs allege that the damages limitation provisions are unenforceable because Defendant (1) suspended Plaintiffs' negotiations with a number of potential distributors and retailers of Scunci products, (2) actively interfered with Plaintiffs' efforts to secure a distribution agreement with LBD Asia, a potential Scunci distributor in Asia, and (3) generally expressed a lack of interest in expanding Scunci's business internationally.  Even viewed in the light most favorable to Plaintiffs, Defendant's alleged misconduct does not "smack[] of intentional wrongdoing" as a matter of law.

### *1. Suspension of Negotiations with Potential Distributors and Retailers.*

Plaintiffs allege that following Defendant's acquisition of Scunci, Defendant instructed Plaintiffs that "all activities intended to expand Scunci's business internationally should be put on hold until a distribution arrangement for Asia was completed."  (Pls.' Counterstatement ¶ 89.)  To that end, Defendant allegedly instructed Plaintiffs to suspend their ongoing negotiations with a potential Brazilian distributor, despite the fact that the Brazilian distributor had signed a letter of intent, expressing its interest in selling Scunci

8

products. (Pls.' Counterstatement ¶ 91.) Defendant also allegedly instructed Patrick Dolbeau, a consultant also working to expand Scunci's business, but employed by Defendant under a separate consultancy contract, to "cancel all his scheduled appointments with potential distributors and retailers" of Scunci products.[3] (Opp'n 5.)

Defendant's decision to "put on hold" Plaintiffs' and Dolbeau's consulting activities does not constitute the sort of "egregious intentional misbehavior" that would invalidate the damages limitation provisions in the parties' consultancy agreements. Plaintiffs present no evidence that Defendant's decision was motivated by a malicious intent, callous indifference to Plaintiffs' rights, or was otherwise reckless in nature. Rather, the evidence demonstrates that Defendant's decision was part of a broader strategy to prioritize the entry into the Asian market above all other markets. (Pls.' Counterstatement Ex. 14.) Such economically-motivated decisions do not "smack of intentional wrongdoing" as a matter of law. See, e.g., Net2Globe Int'l, Inc., 273 F. Supp. 2d at 451 (finding that "economically motivated decision[s] cannot, as a matter of law, rise to the level of malice or intentional wrongdoing

---

[3] Defendant eventually terminated its consultancy agreement with Dolbeau on June 24, 2005, which Plaintiffs claims "clearly signal[ed] that Defendant [was] not interested in dedicating resources to the sale of Scunci products abroad." (Opp'n 7, 12.)

necessary to invalidate the contracts' limitation on liability provision"); Metropolitan Life Ins. Co., 643 N.E.2d at 509 (holding that conduct "motivated exclusively by [defendant's] own economic self-interest" is insufficient to abrogate a limitation on liability provision).

### *2.  Interference with Negotiations with LBD Asia.*

Plaintiffs allege that Defendant actively interfered with Plaintiffs' negotiations with a potential Asian distributor, LBD Asia.  Defendant allegedly contacted the president of LBD Asia, Eric Noyel, and informed him that any distribution agreement between LBD Asia and Scunci would necessarily preclude LBD Asia from selling Scunci products to Park & Shop, one of the largest retailers in Hong Kong.  (Pls.' Counterstatement ¶¶ 92-93.) According to Plaintiff, "[w]ithout Park & Shop, a distribution deal for Scunci products was far less lucrative and far less attractive to LBD Asia."[4]  (Pls.' Counterstatement ¶ 95.)

Defendant's alleged conduct with respect to LBD Asia does not justify setting aside the damages limitation provisions. Plaintiffs themselves explain that Defendant sought to exclude Park & Shop from any distribution agreement with LBD Asia because

---

[4] In support of their allegations regarding Defendant's dealings with LBD Asia, Plaintiffs rely on the Declaration of Eric Noyel, dated March 5, 2007.  Defendant objects to the Noyel Declaration, stating that Noyel "has not appeared for deposition despite significant efforts of the Defendant to obtain his testimony."  (Reply 2 n.1.) Because the Court rules in Defendant's favor on the damages limitation issue even considering the Noyel Declaration, the Court declines to address Defendant's objection to the declaration.

10

Defendant "was currently selling products to [Park & Shop] and [Defendant] did not want [Defendant's] products to be competing with Scunci products." (Pls.' Counterstatement ¶ 94.) As described above, such economically-motivated decisions do not amount to the sort of "egregious intentional misbehavior" that may invalidate the damages limitation provisions.[5] See Net2Globe Int'l, Inc., 273 F. Supp. 2d at 451; Metropolitan Life Ins. Co., 643 N.E.2d at 509.

### 3. *Defendant's Alleged Lack of Interest in Expanding Scunci's Business.*

Plaintiffs also allege that Defendant generally expressed a "complete lack of interest" in expanding Scunci's business. As evidence of this lack of interest, Plaintiffs point to two meetings held in the summer of 2005, during which Defendant "never even tried to discuss the topic of selling Scunci products internationally pursuant to the [parties' consultancy agreements]." (Opp'n 12.) During the first meeting, held on May 10, 2005, Defendant allegedly discussed entering into a "revised

---

[5] Plaintiffs also allege that Defendant declined to send LBD Asia samples of certain Scunci products, despite the fact that LBD Asia had specifically requested such samples for use in its sales pitches to potential retailers. (Pls.' Counterstatement ¶¶ 98, 102.) The evidence shows, however, that Defendant had already sent LBD Asia numerous samples of a variety of Scunci products; Defendant declined to send LBD Asia additional Scunci product samples for economically self-interested reasons, namely, because it wished to "enter the market sooner rather than later," so as to "test[] the market [and then] decide if we should offer the new package . . . ." (Pls.' Counterstatement Ex. 17.) As described above, such economically-motivated decisions do not amount to "egregious intentional misbehavior" as a matter of law.

11

agreement" between Tradex and Defendant, under which Tradex would identify companies in Europe with whom Defendant could "create business dealings" unrelated to the sale of Scunci products. (Opp'n 12.) At the subsequent meeting, held on June 23, 2005, Defendant discussed the possibility of acquiring a hair product company based in France, with which Plaintiffs had conducted some business. (Opp'n 12.)

The fact that Defendant did not discuss the parties' consultancy agreements at two meetings with Plaintiffs during the summer of 2005 does not constitute "egregious intentional misbehavior" on the part of Defendant. Plaintiffs provide no evidence that Defendant's silence at these meetings on the subject of expanding Scunci's business was motivated by bad faith. Even drawing all inferences in favor of Plaintiffs, Defendant's conduct at these meetings does not evince the sort of "extreme culpability" necessary to invalidate the damages limitation provisions.[6] Compare Deutsche Lufthansa AG, 2007 WL 403301, at *4 (finding that defendant's failure to inform plaintiff that it was considering terminating the contract did

---

[6] As further evidence of Defendant's purported "lack of interest" in expanding Scunci's business, Plaintiffs note that Defendant entered into a second consultancy agreement with Plaintiff Pahlen (the "Second Pahlen Consultancy Agreement") in September 2004, but then terminated this agreement in May 2005. Plaintiffs, however, provide no information regarding the parties' obligations under the Second Pahlen Consultancy Agreement, nor do Plaintiffs allege that it was wrongfully terminated. Thus, there is no evidence to substantiate Plaintiffs' claim that the termination of the agreement constituted "egregious intentional misbehavior" on the part of Defendant.

12

not constitute malicious or grossly negligent conduct sufficient to invalidate a limitation on liability provision) with United States v. Merritt Meridian Constr. Corp., 95 F.3d 153, 167 (2d Cir. 1996) (invalidating a limitation on liability provision based on defendant general contractor's repeated broken promises to provide surveyors necessary for plaintiff subcontractor's work, payment delays resulting in lack of capital for plaintiff, "grossly inflated backcharges" designed to "break" the plaintiff company, and the theft by defendant of $20,000 worth of plaintiff's material).

In sum, Plaintiffs' have not shown that Defendant's alleged conduct "smacks of intentional wrongdoing" so as to render the damages limitation provisions in the parties' consultancy agreements invalid. The damages limitation provisions are therefore enforceable. Pursuant to those provisions, Plaintiffs may not recover actual direct damages and consequential damages for Defendant's alleged breach of contract.

### B. *Defendant has Failed to Show that it is Entitled to Summary Judgment On the Issue of Nominal Damages.*

Defendant argues that it is entitled to summary judgment because Plaintiffs have failed to show damages on their breach of contract claim. In that regard, Defendant has successfully shown that Plaintiffs are precluded from recovering actual direct damages and consequential damages on their breach of contract claim. Defendant, however, fails to address whether Plaintiffs

may nevertheless recover nominal damages for Defendant's alleged breach of contract.  See, e.g., McCoy Associates, Inc. v. Nulux, Inc., 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) (noting that "[w]henever there is a breach of contract or the invasion of a legal right[,] the law infers some damage") (quoting Finley v. Atlantic Transp. Co., 115 N.E. 715 (1917)); see also C.K.S. Ice Cream Co. v. Frusen Gladje Franchise, Inc., 567 N.Y.S.2d 716, 718 (1st Dep't 1991) ("Even if it were shown that no actual damages have been sustained, plaintiff would seem entitled to proceed to trial at least on its contract cause of action[,] if only to vindicate its right to nominal damages."); Hirsch Elec. Co. v. Cmty. Servs., Inc., 536 N.Y.S.2d 141, 143 (2d Dep't 1988) ("[I]t is a well-settled tenet of contract law that even if the breach of contract caused no loss[,] . . . the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any.").  Thus, Defendant is not entitled to summary judgment on the issue of whether Plaintiffs may obtain nominal damages for the alleged breach.

**CONCLUSION**

For the reasons set forth above, the Court concludes that the damages limitation provisions of the parties' consultancy agreements are enforceable. The Court thus grants partial summary judgment to Defendant, and holds that Plaintiffs may not recover actual direct damages and consequential damages on their breach of contract claim.

Defendant has not, however, addressed whether nominal damages are obtainable for Defendant's alleged breach of contract. Accordingly, the Court denies summary judgment without prejudice to Plaintiffs seeking nominal damages in this case.

In accordance with the Scheduling Order, dated May 26, 2006, (Dkt. No. 11) a joint pretrial order, memoranda of law, and proposed voir dire and requests to charge shall be filed no later than May 28, 2008.

SO ORDERED.

Dated: New York, New York
May 6, 2008

_____
Kimba M. Wood
United States District Judge